IN THE COUNTY COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
SMALL CLAIMS DIVISION

| | |
|---|---|
| **MELISSA WILLIS,** | |
| *Plaintiff,* | Case No.: _____ |
| vs. | |
| **MEDLYTIX, LLC,** *and* **EQUIFAX INFORMATION SERVICES, LLC,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Melissa Willis** ("**Ms. Willis**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Medlytix, LLC** ("**Medlytix**") and **Equifax Information Services, LLC** ("**Equifax**") (jointly, "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Willis against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and Section 34.01, Florida Statutes.

3. The Defendants are subject to the provisions of the FCRA and are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4. Venue is proper in Orange County, Florida, under Section 47.051, Florida Statutes, as the acts complained of were committed and/or caused by the Defendants within Orange County.

Page 1 of 17

## PARTIES

5. **Ms. Willis** is a natural person residing in the city of Orlando, Orange County, Florida.

6. Ms. Willis is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. **Medlytix** is a Georgia limited liability company with a primary business address of 675 Mansell Road, Suite 100, Roswell, Georgia 30076.

8. Medlytix's Georgia's registered agent is Arvind Krishnaswami, 675 Mansell Road, Suite 100, Roswell, Georgia 30076.

9. Medlytix bills itself as a healthcare consulting and technology company specializing in the field of predictive analytics.

10. Medlytix is a Reseller of Reports from Consumer Credit Reporting Agencies ("CRAs") within the meaning of 15 U.S.C. § 1681a(u) in that it: (a) for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole, or in part, in the practice of assembling and merging consumer information contained in the database of another consumer reporting agency for purposes of furnishing such information to a third party; and, (b) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

11. **Equifax** is a Georgia corporation, with a primary business address of 1550 Peachtree Street NW, H-46, Atlanta, GA 30309.

12. Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

13. Equifax is a nationwide Credit Reporting Agency ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it

regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.

## FACTUAL ALLEGATIONS

14. At some point prior to February 2022, Ms. Willis required medical treatment.

15. The medical provider charged Ms. Willis for services not covered by insurance.

16. On information and belief, Ms. Willis' medical care provider contracted with Medlytix for services relating to maximizing the medical care provider's profits.

17. Alternatively, Ms. Willis' account was sold to a successor-in-interest, or placed for collection on contingency with a third-party debt collection agency, who then hired Medlytix.

18. On February 22, 2022, Medlytix requested a consumer credit report regarding Ms. Willis from Equifax.

19. Medlytix stated it had permissible purpose to obtain Ms. Willis' report for "account review" purposes.

20. This request was recorded by Equifax. **SEE PLAINTIFF'S EXHIBIT A.**

21. The FCRA, 15 U.S.C. § 1681a(d)(1), defines a "Consumer Report" as "*any* written, oral, or other communication of *any* information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living…" (emphasis added).

22. The information contained in the Equifax report obtained by Medlytix, regarding Ms. Willis, included her current and past employment, and the classification of her current and past residence.

Page 3 of 17

23. Information regarding a consumer's employment and residence bears on the consumer's mode of living and credit worthiness.

24. The consumer report obtained by Medlytix, regarding Ms. Willis, thus meets the definition of a "Consumer Report" under the FCRA.

25. Ms. Willis had no current account with Medlytix.

26. Ms. Willis has never had an account with Medlytix.

27. Thus, Medlytix had no need to review a credit report to determine if Ms. Willis continued to meet the qualifications of an open-ended account.

28. Medlytix is not registered or licensed in Florida to act as a debt collector.

29. Upon information and belief, Medlytix does not engage directly in debt collection activities of its own.

30. Medlytix had no need for Ms. Willis' credit report *for its own purpose.*

31. Medlytix had in its possession the name of Ms. Willis' medical care provider or its successor-in-interest, at the time of its requests for Ms. Willis' consumer report.

32. The FCRA, at 15 U.S.C. §§ 1681e(e)(1)(A) and 1681e(e)(2)(A)(i), requires that any person who procures a consumer report for purposes of reselling the report – or any information in the report – disclose to the CRA the identity of the end user of the information.

33. When a CRA is properly informed that a request for a report is made on behalf of a third-party, the record of the inquiry indicates both the name of the entity requesting the report *and* the name of the entity for whom it was requested.

34. Medlytix, when requesting the consumer report regarding Ms. Willis, failed to disclose to Equifax that it was acting as a reseller of reports.

35. Medlytix similarly failed to disclose the name of the entity to which Medlytix furnished the information.

36. Medlytix thus deprived Ms. Willis of the knowledge of the identity of the true party obtaining her personal information.

37. Equifax, as a CRA, is required, per 15 U.S.C. § 1681g(a)(3)(A), to disclose to Ms. Willis, upon her request, *each* person, including an end user, who obtains a consumer report from it within the prior year.

38. Equifax as a CRA, is also required, per 15 U.S.C. § 1681e(a), to investigate prospective users of its consumer reports and verify the uses any such user provides to obtain consumer reports.

39. Equifax knows that Medlytix is a reseller of consumer reports and that Medlytix obtains consumer reports for use by its clients.

40. On July 26, 2022, Ms. Willis requested and obtained a consumer credit disclosure from Equifax.

41. Despite knowledge that Medlytix is in fact a reseller, Equifax disclosed the Medlytix inquiry without any indication of the true end user of the report. **SEE PLAINTIFF'S EXHIBIT A.**

42. Equifax therefore failed to disclose to Ms. Willis the identity of each person that obtained her consumer report within the prior year, as it did not disclose the end user of the report sold to Medlytix.

43. On information and belief, Medlytix requests thousands of reports from Equifax each month concerning consumers, in each instance acting as a reseller of information to its clients.

44. Pursuant to the FCRA, no permissible purpose exists for an entity to obtain a credit report if that entity has no connection with the consumer, is not collecting a debt resulting from a credit transaction with the consumer, and has no other connection to the consumer other than being asked to obtain it, unless such entity is a reseller of reports – in which case it is required to disclose the party on whose behalf it is acting.

45. As aforementioned, Ms. Willis has no account directly with Medlytix.

46. A *Credit Transaction* involving the consumer is one in which the consumer voluntarily participates and enters into an agreement to receive goods or services in advance of payment, with the consent of both parties. *See Pintos v. Pacific Creditors Association*, 504 F. 3d 792, 798 (9th Cir. 2007); *Miller v. Trans Union LLC*, No. 06 C 2883 at *7 (N.D. Ill. Feb. 28, 2007); *Rodriguez v. Experian Info. Sols., Inc.*, Case No. C15-01224RAJ, at *9 (W.D. Wash. Jul. 25, 2016).

47. Ms. Willis' payment for medical services was due immediately upon provision of such services.

48. Thus, Ms. Willis was not involved in any credit transaction relating to her medical services.

49. Medlytix thus had no permissible purpose to obtain Ms. Willis' consumer report from Equifax, unless Medlytix was acting as a Reseller.

### Ms. Willis' July 2022 Consumer Disclosure

50. As aforementioned, on July 26, 2022, Ms. Willis requested and obtained a consumer credit disclosure from Equifax.

51. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. Willis' request, Equifax was required to "clearly and accurately" disclose all information in Ms. Willis' file at the time of her

request, with the limited exception that her Social Security number could be truncated upon request.

52. Equifax provided an electronic copy of Ms. Willis' consumer disclosure to her at her home address in Orlando, Florida.

### Equifax's Disclosure Was Not Complete, Clear, or Accurate

### Missing Account Numbers

53. Despite a requirement to disclose all information in her credit file at the time of her request, Equifax's Disclosure omitted significant amounts of information contained in her credit file.

54. Under the heading "Revolving Accounts," Equifax disclosed thirteen (13) accounts without full account numbers.

55. Likewise, under the heading "Installment Accounts," Equifax disclosed eleven (11) accounts without full account numbers.

56. On information and belief, the data furnishers for each of the 24 accounts reported full account numbers to Equifax, and this information was contained within Equifax's file regarding Ms. Willis at the time of her request.

57. When Equifax produces and sells reports regarding Ms. Willis to third parties, the full account numbers are included in its reports.

58. The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its file regarding Ms. Willis.

59. Having a duty to disclose ***all of the information*** regarding the accounts in Ms. Willis' file, Equifax breached its duty by failing to provide the account numbers, as such

information is necessary for a consumer to be able to research and evaluate the information contained in her credit file.

60. Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

61. Due to widespread systemic problems, Equifax's automated systems omit all but the last two or four account numbers reported by data furnishers that have a reported current payment status of "charge off," in addition to many other types of accounts.

62. Equifax knows of this error but, despite such knowledge, has yet to correct it.

63. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019).

64. The lack of accurate, full account numbers caused Ms. Willis great frustration and emotional distress when trying to understand her credit report and verify it against her own records.

65. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." **SEE PLAINTIFF'S EXHIBIT B.**

66. Equifax's omission of the account numbers greatly decreases a consumer's ability to understand her consumer credit disclosure, identify the accounts, and compare those accounts with her own records.

### Prevalence of Equifax's Account Number Errors

67. On information and belief, Equifax's Disclosure to Ms. Willis was generated using

a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

68. On information and belief, the same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

69. Thus, *every* consumer who requested their disclosure from Equifax through www.annualcreditreport.com since the template's use began, received a consumer disclosure with the same errors as Ms. Willis.

70. Equifax, through litigation, has known of these flaws in its systems for years but has done nothing to fix it, despite the large number of consumers affected. *See, e.g., Justin Purdy vs. Equifax Information Services LLC,* case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

71. Despite ample notice and time to correct their errors, Equifax continues to provide false and incomplete information in its disclosures to consumers.

72. Equifax's knowing and repeated conduct warrants an award of **punitive damages**.

73. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by Equifax's desire to avoid costs and increase profits.

74. Ms. Willis has a right to a full and complete disclosure of the contents of her file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

75. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Ms. Willis deprived Ms. Willis of this right.

76. The Defendants' conduct in failing to disclose the identity of the true end user of the information contained within Equifax's consumer report has deprived Ms. Willis, and

thousands of other consumers, of the knowledge of who has the highly personal and confidential information contained within an Equifax consumer report.

77. Ms. Willis has also suffered severe distress in knowing that someone – but not who – is in possession of the highly personal and confidential information contained within an Equifax consumer report.

78. Ms. Willis has hired this law firm to represent her in this matter and is obligated to pay its reasonable fees.

## COUNT I
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(e)(1)(A)
## Medlytix Only

79. Ms. Willis adopts and incorporates paragraphs 1 - 78 as if fully stated herein.

80. Medlytix violated **15 U.S.C. § 1681e(e)(1)(A)** when it obtained Ms. Willis' consumer report from Equifax, while acting as a reseller of the information therein, without disclosing to Equifax the name of the entity for which it was requesting the report.

81. Medlytix's actions and omissions were willful and intentional, as it knew, or reasonably should have known, of its duty to disclose the name of the entity for which it was requesting the report, and it intentionally failed to disclose this information.

82. Medlytix's actions exhibited a reckless disregard for the rights of a consumer since it should have reasonably known that its failure to disclose the name of the entity for whom it was requesting a report would leave the consumer without knowledge as to who was actually receiving her private and personal information.

83. Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Willis' actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

84. Alternatively, Medlytix's conduct was negligent, and Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Willis' actual damages.

**WHEREFORE,** Ms. Willis respectfully requests this Honorable Court to enter judgment against Medlytix for:

a. The greater of statutory damages of $1,000.00 per incident and Ms. Willis' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Willis' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA - 1681e(e)(2)(A)(i)
## Medlytix Only

85. Ms. Willis adopts and incorporates paragraphs 1 - 78 as if fully stated herein.

86. Medlytix violated **15 U.S.C. § 1681e(e)(2)(A)(i)** when it obtained Ms. Willis' consumer report from Equifax, while acting as a reseller of the information therein, without disclosing to Equifax the name of the entity for which it was requesting the reports.

87. Medlytix's actions and omissions were willful and intentional, as it knew, or reasonably should have known, of its duty to disclose the name of the entity for which it was requesting the report, and it intentionally failed to disclose this information.

88. Medlytix's actions exhibited a reckless disregard for the rights of a consumer since it should have reasonably known that its failure to disclose the name of the entity for whom it was

requesting a report would leave the consumer without knowledge as to who was actually receiving her private and personal information.

89. Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Willis' actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

90. Alternatively, Medlytix's conduct was negligent, and Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Willis' actual damages.

**WHEREFORE,** Ms. Willis respectfully requests this Honorable Court to enter judgment against Medlytix for:

a. The greater of statutory damages of $1,000.00 per incident and Ms. Willis' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Willis' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d. Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681g(a)(3)(A)(ii)
## Equifax Only

91. Ms. Willis adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

92. Equifax violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, that procured Ms. Willis' consumer report during the one-year period preceding the date on which the request was made. Specifically, Equifax failed to identify

the end-user of the consumer report which it sold to Medlytix on February 22, 2022, in its July 26, 2022 disclosure to Ms. Willis.

93.     Equifax, who has a duty to investigate each entity to whom it sells a report, knows, or should know, that Medlytix is a reseller of information, but despite such knowledge, Equifax either: (a) does not require Medlytix to provide the identity of its clients; or (b) has such information but refuses to disclose it to the consumer upon request, despite its obligations under 15 U.S.C. § 1681g.

94.     Equifax's conduct was thus willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA.

95.     Equifax is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Willis' actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

96.     Alternatively, Equifax's conduct was negligent, and Equifax is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Willis' actual damages.

**WHEREFORE,** Ms. Willis respectfully requests this Honorable Court to enter judgment against Equifax for:

   a.   The greater of statutory damages of $1,000.00 per incident and Ms. Willis' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Willis' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

   d.   Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681g(a)(1)
## Equifax Only

97. Ms. Willis adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

98. Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Willis' request for her consumer disclosure by failing to clearly and accurately disclose to Ms. Willis, a *Consumer*, all of the information in her file at the time of the request. Specifically, Equifax disclosed twenty-four (24) accounts without full account numbers, even though full account numbers were reported by the data furnishers.

99. Equifax knowingly provided inaccurate information in Ms. Willis' disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

100. Equifax's failure was a willful failure to fulfill its duty to clearly and accurately disclose to Ms. Willis all of the information in her file at the time of the request, and thus, Ms. Willis is entitled to the greater of her actual damages and statutory damages pursuant to 15 U.S.C. § 1681n.

101. Alternatively, Equifax's conduct was negligent, and Ms. Willis is entitled to her actual damages pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Ms. Willis respectfully requests this Honorable Court to enter judgment against Equifax for:

    a.    The greater of statutory damages of $1,000.00 per incident and Ms. Willis' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Willis' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

    d.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Willis hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **December 27, 2022,** by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866
BScarangella@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**EXHIBITS**
A    Plaintiff's Equifax Consumer Disclosure, July 26, 2022, Inquiry Excerpt
B    FTC Opinion Letter

# EXHIBIT A
## Plaintiff's Equifax Consumer Disclosure –July 26, 2022 – Inquiries



# EXHIBIT B
## FTC Opinion Letter



## Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.
Asst. General Counsel
TRANS UNION
555 West Adams Street
Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff